# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| PETRA RIOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. SA CV 16-01049-AS<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter be remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On June 6, 2016, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Caroyln W. Colvin in this case. See 42 U.S.C. § 205(g).

Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11, 13). On October 14, 2016, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 16-17). On January 19, 2017, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 18).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed June 7, 2016 (Docket Entry No. 9).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 5, 2013, Plaintiff, formerly employed as a garment labeler and as a mail room person in a cosmetic warehouse (<u>see</u> AR 53-54, 204, 213-14, 235-36), filed an application for Disability Insurance Benefits alleging an inability to work because of a disability since March 12, 2009. (<u>See</u> AR 192-93). On December 2, 2014, the Administrative Law Judge ("ALJ"), Helen E. Hesse, heard testimony from Plaintiff (represented by counsel), and vocational expert Susan Allison. A Spanish interpreter was present for Plaintiff. (<u>See</u> AR 39-72). On February 11, 2015, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 20-29). After determining that Plaintiff had severe impairments -- "degenerative disc disease of the lumbar and cervical spine; bilateral shoulder impingement syndrome, status post arthroscopy with manipulation for frozen shoulder; chronic pain syndrome; mild depression; bilateral knee chondromalacia; and thoracic outlet syndrome" (AR 22-24) --, the ALJ found that Plaintiff had the

2

residual functional capacity ("RFC")[2] to perform light work[3] with the following limitations: sitting, standing and walking for 4 hours in an 8-hour workday with normal breaks; lifting and carrying 20 pounds occasionally and 10 pounds frquently; climbing stairs, bending, balancing, stooping, kneeling, crouching, or crawling occasionally; precluded from climbing ropes, ladders, or scaffolding; performing gross and fine manipulation frequently, but not continuously; peforming overhead reaching with both upper extremities occcasionally; performing moderately complex tasks with Specific Vocational Preparation ("SVP") 3 to 4 involving no hypervigilence; precluded from being in charge of safety operation of others; and precluded from intense interpersonal interactions such as taking complaints or encounters similar to those experienced by law enforcement or emergency personnel. (AR 24-29). Finding that Plaintiff was capable of performing past relevant work as a marker/tagger as actually performed and as generally performed, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 29).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 9-13). The request was denied on April 19, 2016. (See AR 1-5). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in: (1) failing to give proper weight to Plaintiff's treating physicians and evidence favorable to Plaintiff; (2) finding that Plaintiff was literate in English; and (3) finding that Plaintiff was not fully credible with respect to her testimony regarding her subjective pain and limitations. (See Joint Stip. at 4-9, 16-27, 33).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error (in part) warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error (in part), the Court will not address Plaintiff's first claim of error (in part), second claim of error, or third claim of error.

**A.  The ALJ Did Not Properly Reject the Opinion of Plaintiff's Treating Physician, Lawrence Miller, M.D., and Examining Physician Ernest Bagner, III, M.D.**

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians, Drs. Miller, Schmidt, Kahn, and Larsen. Plaintiff further asserts that the ALJ failed to proved a proper reason for rejecting the opinion of examining physician Dr. Bagner (See Joint Stip. at 4-9, 16-

17).[4]  Defendant asserts that the ALJ provided valid reasons for giving Plaintiff's treating physicians' and examining physician's opinions little weight.  (See Joint Stip. at 9-16).

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 416.927(b)-(d). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons."  Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, 81 F.3d at 830-31.  If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the

---

[4] These were the treating physicians and examining physician Plaintiff specifically identified.  The Court's analysis of Plaintiff's claim will be limited to the opinions of Drs. Miller and Bagner.

opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester v. Chater, supra.

**Dr. Miller**

Lawrence Miller, M.D., a pain management specialist, treated Plaintiff as part of her California Worker's Compensation claim from August 22, 2011 to December 9, 2013. (See AR 564-676, 877-89).

In an Initial Evaluation Report, Progress Notes and/or Supplementary Reports dated August 22, 2011, October 3, 2011, October 31, 2011, December 19, 2011, January 30, 2012 and February 27, 2012, Dr. Miller diagnosed Plaintiff with right shoulder internal derangement; chronic cervical discogenic disease; chronic lumbar discogenic disease with possible left lumbar radiculitis; and chronic pain syndrome with anxiety, depression and sleep disturbance. (See AR 603-08, 610-17, 658-76). In Supplementary Reports dated April 9, 2012 and May 21, 2012, Dr. Miller gave Plaintiff the same diagnoses, except with the added diagnosis of bruxism. (See AR 597-602). In Progress Notes and/or Supplementary Reports dated July 2, 2012, August 13, 2012, and November 12, 2012, Dr. Miller gave Plaintiff the same diagnoses, but added to rule out right thoracic outlet syndrome. (See AR 581-82, 590-91, 594-95). In Progress Notes dated January 21, 2013 and January 28, 2013, and March 18, 2013, Dr. Miller gave Plaintiff the same diagnoses, except for the definitive diagnosis of right thoracic outlet syndrome. (See AR 570-73, 579-80). In Progress Notes dated May 13, 2013, June 24, 2013 and August 5, 2013, Dr. Miller gave Plaintiff the same diagnoses, except for the added diagnosis of bilateral knee patellofemoral

arthralgia/chondromalacia. (See AR 564-69). On each occasion, Dr. Miller found Petitioner's disability status to be Totally Temporarily Disabled. (See AR 564-73, 579-82, 590-91, 594-95, 597-608, 610-17, 658-76).

In a Report dated December 9, 2013, Dr. Miller diagnosed Plaintiff with bilateral shoulder internal derangement, cervical discogenic disease, lumbar discogenic disease, right thoracic outlet syndrome, bilateral knee patellofemoral arthralgia/chondromalacia, and chronic pain syndrome with depression, bruxism and sleep disorder, and found Plaintiff's disability status to be permanent and stationary. (See AR 877-89).

In a Physician's Source Statement dated November 25, 2014, Dr. Miller opined that Plaintiff had the following physical capacity: Plaintiff is precluded from sitting, standing, lifting, fine manipulation and gross manipulation for 20 percent or more of an 8-hour workday; Plaintiff can use a keyboard 15 minutes per hour; based on Plaintiff's physical and/or mental limitations, Plaintiff would be unable to perform a job ("unable to perform work and/or away from [the] work environment) more than 30 percent of an 8-hour workday, 5 days a week; Plaintiff is likely to be absent from work an average of 5 days or more per month; Plaintiff is likely to be unable to complete an 8-hour workday an average of 6 days per month; and compared to an average worker, Plaintiff could be expected to perform a job 8 hours per day, 5 days per week, on a sustained basis less than 50 percent. (See AR 890).

After reciting the first portion of Dr. Miller's opinions about Plaintiff's functional limitations (see AR 27), the ALJ addressed Dr. Miller's opinions as follows: "The opinions of Dr. Miller are given little weight since limitation of '20% or more of an 8 hour' is vague and unclear in the Social Security disability claims. For instance, 20% of 8 hours is 1.6 hours, which leaves 6.4 hours in an 8 hour day for the claimant to perform sitting, standing, lifting, and fine/gross manipulation. However, it is not clear how much "more of an 8 hour' the claimant would be restricted from performing such activities." (AR 27).[5]

Here, the ALJ erred in failing to translate Dr. Miller's opinions about Plaintiff's limitations in the Workers' Compensation context into the Social Security context. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-06 (C.D. Cal. 2002) ("[T]he ALJ may not disregard a physician's medical opinion simply . . . because it is couched in the terminology used in such proceedings."; "The ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination."); Vasquez-Pamplona v. Colvin, 2015 WL 5796994, *4 (C.D. Cal. Sept. 30, 2015) ("A Social Security decision must, however, reflect that the ALJ properly considered the pertinent distinctions between the state and federal statutory schemes, and that the ALJ accurately assessed the implications medical findings drawn from a worker's compensation opinion may have for purposes of a Social Security disability determination.";

---

[5] The Court will not consider reasons for rejecting Dr. Miller's opinions (see Joint. Stip. at 12, 15) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

8

citing Booth v. Barnhart, 181 F.Supp.2d at 1106); see also Lester v. Chater, 81 F.3d at 830 ("[T]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").

Moreover, the ALJ erred in failing to develop the record to determine what Dr. Miller meant when he opined that Plaintiff was precluded from certain activities (sitting, standing, lifting, fine manipulation and gross manipulation) for "20 percent or more of an 8-hour work day". See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by supoenaing the physicians or submitting further questions to them" or by "continuing the hearing to augment the reocrd") (citation omitted); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (the ALJ's duty to develop the record is triggered when there is "ambiguous evidence" or when "the record is inadequate to allow for proper evaluation of the evidence"); Brown v. Heckler, 713 F.2d 441, 441 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" even when the claimant is represented by counsel).

Finally, the ALJ erred in failing to discuss or address Dr. Miller's other opinions (i.e., Plaintiff was likely to likely to be absent from work an average of 5 days or more per month; Plaintiff was likely to be unable to complete an 8-hour workday an average of 6 days per month). See 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); Embrey v. Bowen, 849

F.2d 418, 421 (9th Cir. 1988) ("We have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard the, 'he must set forth specific, legitimate reasons for doing so, and this decision must be based on substantial evidence.'") (citation omitted).

**Dr. Bagner**

In a report dated August 2, 2011 (following a psychiatric evaluation), Ernest Bagner, III, M.D., a psychiatrist, diagnosed Plaintiff with major depressive disorder, with physical issues and moderate psychosocial/environmental stressors, and with a Global Assessment Functioning score of 63; and found that Plaintiff had the following functional limitations: mild limitations in maintaining concentration and attention and in completing complex tasks; moderate limitations in handling normal stresses at work, due to depression, and in completing a normal work week without interruption, due to low motivation and nervousness; and no limitations in interacting with supervisors, peers and the public and in completing simple tasks. (See AR 412-15).

In a report dated August 6, 2013 (following a pscyhiatric evaluation), Dr. Bagner diagnosed Plaintiff with major depressive disorder, with educational, occupational, economic and health problems, and with a Global Assessment Functioning Score of 65; and found that Plaintiff had the following functional limitations: mild limitations in the abilities to follow detailed instructions, to comply with job rules such as safety and attendance, and to respond to changes in a work

setting; moderate limitations in the abilities to respond to work pressure in a usual work setting, due to depression and nervousness, and to perform daily activities, due to emotional and physical conditions; and no limitations in the abilities to follow simple, oral and written instructions, and to interact appropriately with the public, co-workers and supervisors. (See AR 679-83, 686-90).

After reciting Dr. Bagner's opinions (see AR 28), the ALJ addressed Dr. Bagner's opinions as follows:

> The opinions of Dr. Bagner are given little weight because there is no evidence of on-going psychiatric documenting significant mental conditions, and his own mental status examination showed intact speech, no flight of thought, looseness of association, thought blocking, or distractibility, average intelligence, ability to perform serial three, intact judgment and insight, normal reality contact, and no suicidal or homicidal evidence (Exhibit 11F/5; 21F/5).

(AR 28).

Contrary to Defendant's assertion (see Joint. Stip. at 13), Dr. Bagner's examination findings that (1) Plaintiff had intact speech, no flight of thought, no looseness of association, no thought blocking and no distractibility; (2) Plaintiff was of average intelligence; (3) Plaintiff was ability to perform serial threes; (4) Plaintiff had intact judgment and insight; (5) Plaintiff had normal reality contact, and (6)

11

Plaintiff did not have suicidal or ideation (see AR 413-14, 681-82), were not inconsistent with Dr. Bagner's opinions about Plaintiff's moderate limitations in her abilities to handle normal stresses at work (due to depression) and to complete a normal work week without interruption (due to low motivation and nervousness). Indeed, the ALJ failed to state how such findings were inconsistent with Dr. Bagner's opinions. See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."). Moreover, as Plaintiff points out (see Joint. Stip. at 681), Dr. Bagner's opinions appear to have been supported by other examination findings (see AR 413-14 [the August 2, 2011 examination reflected that Plaintiff's "affect [was] mood congruent," Plaintiff's speech was "moderately decreased in volume rate and rhythm," Plaintiff could only "register one out of three objects after five minutes," and Plaintiff was unable to do "serial sevens"]; AR 681 [the August 6, 2013 examination reflected that Plaintiff's speech and volume were soft, Plaintiff's "mood was depressed" and her "[a]ffect were blunted," and Plaintiff was not able to perform "serial sevens"]).

Defendant's contention that "moderate limitations are not evidence of a disabling impairment and are not limitations that need to be presented to a vocational expert" (Joint Stip. at 13-14, citing Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) and Young v. Heckler, 803 F.2d 963, 967 (9th Cir. 1986)) is not relevant to the issue concerning the adequacy of the ALJ's reasons to give little weight to an

examining psychiatrist's opinions about a claimant's moderate limitations.

Since it does not appear that another doctor has contradicted Dr. Bagner's opinions about Plaintiff's moderate limitations, the ALJ has failed to provde "clear and convincing reasons" for giving little weight to Dr. Bagner's opinions. See <u>Carmickle v. Commissioner</u>, <u>supra</u>; <u>Lester v. Chater</u>, <u>supra</u>.

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess the opinions of Drs. Miller and Bagner, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff]

13

is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[6]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 21, 2017

/s/<br>
ALKA SAGAR<br>
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's errors in (1) giving little weight to the opinions of Plaintiff's other treating physicians (Drs. Schmidt, Kahn and Larsen) (<u>see</u> Joint Stip. at 4-9, 16-17); (2) finding that Plaintiff was literate in English (<u>see</u> Joint Stip. at 4, 17-21); and (3) finding that Plaintiff was not fully credible with respect to her testimony regarding her subjective pain and limitations (<u>see</u> Joint Stip. at 4, 21-27, 33). Because this matter is being remanded for further consideration, these issues should also be considered on remand.